JOHN FAGAN

*v.*

THEODORE SCHULTZ *et al.*

</div>

CHANCERY—*rescission of contract.* On a bill for the rescission of a contract and cancellation of a deed, made by a party who had but recently become of age, but after he had made a settlement with his guardian, it appeared that the consideration paid for the conveyance was $1000, and that the property was worth about $3000, but that the title of the grantor to a portion of it was doubtful. It also appeared, that the purchaser was a partner of the guardian of the party selling, but that the guardian had no interest in the purchase: *Held*, that the fact of the partnership of the guardian and the purchaser did not raise any presumption of fraud in the purchase, and that, in view of the possible litigation over the title, the inadequacy of price was such as to impeach the fairness of the transaction.

APPEAL from the Superior Court of Cook county; the Hon. S. M. MOORE, Judge, presiding.

Messrs. BARBER & LACKNER, for the appellant.

Messrs. RUNYAN, AVERY & COMSTOCK, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a suit in equity, for the rescission of a contract and the cancellation of a deed of conveyance for a tract of land, situate in the town of Jefferson, in the county of Cook. It appears that the property in controversy belonged to James Fagan, and was his homestead during his life, and that he

34—73D ILL.

made his last will and testament, by which, after providing for the payment of his debts, he bequeathed to five of his heirs his personal property, to be equally divided among them. And the will contained this further clause: "To my son, John Fagan, I give my farm, known as my homestead, which is to be kept for his benefit until he shall be 21 years of age."

It appears that one Frank Wulf was appointed, after the death of testator and on the probate of the will, administrator, with the will annexed, the executor named in the will having refused to act. Afterwards, in 1866, he was also appointed as guardian of John Fagan, and on his arriving of age, about the 30th of January, 1873, he had a settlement with his guardian, and about the middle of February, of that year, he sold the premises to Theodore Schultz for $1000, which was paid at and soon after the sale.

He claims that he was kept in ignorance of his rights, and that Wulf, his guardian, repeatedly stated to him, that he, under the will, had only a title to one-eighth part of the land; that he had taken legal advice, and that Runyan and others had so informed him; that complainant believed the statements of his guardian, and that he supposed he was only selling an interest of one-eighth part of the tract, and did not intend to sell the whole; that Wulf, Schultz and one Peters were in partnership in manufacturing brick on the premises, and had been for two or three years before complainant came of age; that they combined to cheat and defraud him out of the land, and that the purchase was made under the influence of the fraudulent representations of his guardian, for their benefit, at about one-eighth of its value.

A hearing was had, when the bill was dismissed so far as it related to this land and the prayer to set aside the sale and to cancel the deed, and the case is brought here, and we are asked to reverse that decree.

The evidence, we think, largely preponderates in favor of the theory that complainant intended to sell all of his interest in the premises, be that what it might. He had consulted a lawyer, who informed him that he would, for $500, secure the

title to the entire tract. This advice was given to him on an inspection of a copy of the will, and the attorney was of his own choice, and one in whom he had confidence, we may reasonably presume. He seems to have been reckless, dissipated and wasteful, in a high degree. He wasted his money in reckless debauchery with great rapidity, and seemed to have no care for the future, or to save any of his means; but it is clear that he was sober when he made the sale, and whilst the evidence shows that the property was worth from $2800 to $3000, he sold it for $1000. But, had he retained it, and litigation had ensued, as we think, from the evidence, would have been the case, he would, in the end, not, perhaps, have realized more than he did. It is true, his attorney offered, for $500, to remove all doubt, and leave his title clear. The inadequacy of price is not so gross as to constitute ground for setting aside the sale.

It is urged, that the relation of guardian and ward gave the former an undue influence over the latter, which was exercised to instill the belief on the part of the ward that the title was defective, and at least uncertain to more than one-eighth, and the property was of little value. The clause in the will devising the property to appellant was so worded as to leave doubt on the minds of persons not highly educated, and having limited legal knowledge, and Wulf may have been, and probably was, honest in all he said in reference to the provisions of the will. He does not admit that he stated he had consulted several lawyers, and that he only spoke their opinions. As to his attempting to make appellant believe that the property was of little value, we think that is entirely disproved, as appellant says that Wulf, but a short time before he arrived at age, said to him, if he wanted to sell the property on arriving of age, he would purchase it, and that it was worth from $3000 to $4000. This, from the evidence, was its full value, if not more. This explodes all pretense that Wulf endeavored to depreciate its value, and is a strong circumstance going to rebut the claim that he endeavored to make the impression that Fagan had no title to but one-eighth part of the tract. Other-

wise, why offer to purchase the tract, and not his interest in the tract? Why intimate that he would give from $3000 to $4000 for it? This has the appearance of neither depreciating the title nor the price.

It is also urged, that Wulf, Schultz and Peters were partners in the manufacture of brick on the place, and were paying rent for its use, and that the purchase was made for them jointly, and the influence of Wulf was used to obtain the property at the low rate it was purchased; that one of the partners was used to give the color of fairness to the transaction. We fail to see anything more than the conclusion of a highly suspicious mind in all these facts.

The habits and course of life pursued by appellant depreciates largely the value of his evidence as to what was said to make him distrust the title, and all three of the partners deny, in the most unequivocal terms, that there was any plan, arrangement or understanding that they were to purchase the property. And Wulf and Peters both deny they have any interest in the land. Peters and Schultz both testify that the former was to have an interest in the land because the latter did not have the necessary means to purchase it, and that the first deed was drawn to them jointly, but finding that, by mistake, other land was conveyed, when they came to correct the mistake, by executing a new deed, Peters not desiring, even at the price, to have an interest in the land, he gave it up to Schultz, to whom the deed was executed. Peters then loaned Schultz money to assist him in making the payments. No witness contradicts the testimony of these three witnesses, and the circumstances do not overcome their evidence.

We have yet to learn that the purchase, by one partner, of land or property not in the line of their business, is evidence that it is for the benefit of the firm, whether bought at its full value or at but one-third or one-half.

Again, Wulf and Peters both testify that they knew nothing of the intended purchase until it was completed, and in this they are not contradicted.

Schultz testifies that, when appellant offered to sell to him,

he declined, but proposed to rent at double the value of the rent, rather than purchase. He says he did not want to buy, because he lacked means, but preferred to pay double rent, rather than remove the machinery for making brick; that appellant only asked $1500, but he declined to give it, because he feared the other heirs would contest the will, which seems to have been contemplated by a portion of them at least.

Appellant seems to have been determined to sell, if not to Schultz, to some one else, at some price, and, from his habits and character, he would probably have taken even less than he got.

It is urged that Wulf used Schultz to purchase, because he knew if he purchased, his trust relation to appellant would render the sale voidable, if a full and fair price were not paid. This is, to our minds, very improbable, as there is no evidence that he had the requisite amount of legal knowledge to have prevented him from purchasing, had he so desired. From the evidence, it appears he was obliged to consult with Davis as to the manner in which he should settle with his ward, and even had him to draw the receipt to be given on the settlement. This would seem to imply that he was not well informed on nice legal questions, and there is no evidence that he took advice, and he was not even asked whether he had. Appellant's counsel, we think, accredits him with an undue amount of legal knowledge, when he insists that he knew he could not purchase in his own name, and employed another for the purpose.

All the evidence considered, we are unable to see that the transaction is fraudulent. On the contrary, it has, except the very low price paid, all the appearance of ordinary transactions of the kind, and Schultz seems to have been unable to pay more, and appellant was willing to and did accept the $1000 for the land; nor have we been able to find any sufficient evidence authorizing the setting aside of the sale and the cancellation of the deed.

The decree of the court below is affirmed.

*Decree affirmed.*